**SO ORDERED.**

**SIGNED this 10 day of February, 2023.**



_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NO. 19-04279-5-DMW** |
| **CHRISTINE M. SUGAR** | **CHAPTER 13** |
| **DEBTOR** | |

### ORDER DISMISSING CASE AND BARRING FUTURE PETITIONS

This matter comes on to be heard upon the court's Order to Appear and Show Cause entered on July 6, 2022, the Trustee's Motion to Modify Chapter 13 Plan or, in the Alternative, Convert this Case to One Under Chapter 7 or, in the Alternative, Dismiss this Case with Prejudice ("Motion") filed by the Chapter 13 trustee ("Trustee"), on July 15, 2022, the Memorandum of Law Regarding Show Cause Order, the Debtor's Response to Trustee's Motion to Modify Chapter 13 Plan or, in the Alternative, Convert this Case to One Under Chapter 7 or, in the Alternative, Dismiss this Case with Prejudice and related Memorandum filed by Christine M. Sugar ("Debtor") on July 19, 2022, August 5, 2022 and August 16, 2022, respectively, and the Bankruptcy Administrator's Response in Support of the Trustee's Motion to Modify Chapter 13 Plan or, in the Alternative, Convert this Case to One Under Chapter 7 or, in the Alternative, Dismiss this Case with Prejudice filed by Brian C. Behr, Esq. ("BA"), United States Bankruptcy Administrator, on

August 9, 2022.  The court conducted a hearing in Raleigh, North Carolina on August 17, 2022. Michael B. Burnett, Esq. appeared for the Trustee, Travis Sasser, Esq. appeared for the Debtor, and the BA appeared on his own behalf.  Based upon the pleadings, the evidence presented, including the testimony of the Debtor, the arguments of counsel and the case record, the court makes the following findings of fact and conclusions of law:

    1.    This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the court has the authority to hear and determine the matter pursuant to 28 U.S.C. § 157(b)(1).  The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

    2.    The Debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code on September 18, 2019.  The Trustee is serving to fulfill the duties as provided in 11 U.S.C. § 1302.

    3.    When the Debtor filed her petition, she owned real property ("Property") located at 3948 Wendy Lane in Raleigh, North Carolina valued at $150,000.00.  The Debtor estimated that she had equity in the Property in the amount of $32,348.81, and she claimed that entire amount as exempt pursuant to N.C. Gen. Stat. § 1C-1601(a)(1), known as North Carolina's "homestead" exemption.  Pursuant to N.C. Gen. Stat. § 1C-1601(a)(1),

> a debtor is entitled to retain free of the enforcement of the claims of creditors . . . [t]he debtor's aggregate interest, not to exceed thirty-five thousand dollars ($35,000) in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence . . . .

N.C. Gen. Stat. § 1C-1601(a)(1) (2013).

    4.    The Debtor claimed the homestead exemption on the court's Local Form Schedule C-1, which stated above the claimed exemptions "I, Christine M Sugar, claim the following

property as exempt pursuant to 11 U.S.C. § 522 and the laws of the State of North Carolina, and nonbankruptcy Federal law." For the homestead exemption, the Local Form Schedule C-1 includes a space for debtors to designate the "Value Claimed as Exempt Pursuant to NCGS 1C-1601(a)(1)," and in that space is where the Debtor claimed an exemption in the amount of $32,348.81.

5. On September 20, 2019, the court entered an Order and Notice to Debtor imposing certain requirements on the Debtor during the pendency of her case. Paragraph 10 of the Order and Notice to Debtor stated as follows: "**Disposition of Property**: You must not dispose of any non-exempt property having a fair market value of more than $10,000.00 by sale or otherwise without prior approval of the trustee and an order of this court."

6. The Debtor filed a Chapter 13 Plan ("Plan") with her petition, proposing 60 monthly payments in the amount of $203.00, for a total amount of $12,180.00 ("Plan Base"). No party objected to confirmation of the Plan, and on November 22, 2019, the court entered an Order ("Confirmation Order") confirming the Plan. Under the terms of the Plan, the Property vested in the Debtor upon confirmation. The Confirmation Order stated the Debtor "shall not transfer any interest in real property without prior approval of the court except as provided in Local Bankruptcy Rule 4002-1(g)(4) . . . ." Local Bankruptcy Rule 4002-1(g)(4) ("Local Rule"), referenced in the Confirmation Order, directs that "[a]fter the filing of the petition and until the plan is completed, the debtor shall not dispose of any non-exempt property having a fair market value of more than $10,000 by sale or otherwise without prior approval of the trustee and an order of the court." E.D.N.C. LBR 4002-1(g)(4).

7. On June 9, 2022, the BA requested a status conference after becoming aware that the Debtor may be planning to sell the Property without approval of the court. The following day,

and after the court had scheduled a status conference to be held on June 29, 2022, the Debtor filed a Motion ("Sale Motion") seeking court approval to sell the Property. The Sale Motion included as an exhibit an Offer to Purchase and Contract executed by the Debtor as seller of the Property on April 12, 2022. The Sale Motion stated the Debtor desired to sell the Property for $222,000.00.

8. The court scheduled the Sale Motion to be heard on July 7, 2022; however, prior to the June 29, 2022 status conference, the Debtor withdrew the Sale Motion on June 20, 2022. The Debtor's counsel confirmed at the status conference that the Property had sold. That disclosure prompted entry of the Order to Appear and Show Cause.

9. The Debtor has now disclosed that after executing the Offer to Purchase and Contract on April 12, 2022, she transferred the Property pursuant to a deed executed on May 26, 2022, prior to the Sale Motion being filed. Once the mortgagee provided a payoff amount for its lien on the Property, the deed was recorded on June 14, 2022, after the Debtor filed the Sale Motion and before the Sale Motion was withdrawn. The Debtor sold the Property for $222,000.00 and received net proceeds ("Sale Proceeds") in the amount of $94,408.10, an amount far exceeding the amount of the exemption claimed by the Debtor. The Trustee received an electronic payment from the Debtor on July 4, 2022, during the thirty-fourth month of the Plan, in the amount of $5,481.00. That amount equaled the unpaid balance of the Plan Base.

10. In the Motion, the Trustee asserts the Plan should be modified to increase the dividend to unsecured creditors based on the Debtor's receipt of the Sale Proceeds. In the alternative, the Trustee requests the court convert this case to one under Chapter 7 or dismiss this case with prejudice pursuant to 11 U.S.C. § 1307(c). The Trustee cites as cause for conversion or dismissal the Debtor's apparent willful failure to comply with the Order and Notice to Debtor issued at the outset of this case, the Confirmation Order and the Local Rule. The Trustee also

questions the Debtor's motivation behind satisfying her Plan Base in a lump sum on July 4, 2022, noting it "may have been a deliberate attempt to foreclose a modification of the Plan following her unapproved sale of the Property."

11. The Debtor asserts she became entitled to an immediate discharge under 11 U.S.C. § 1328(a) when she paid the balance of the Plan Base, and the court is precluded from granting the relief requested by the Trustee. The Debtor also argues she did not violate the Local Rule, and she challenges the validity of the Local Rule.

<u>The Debtor was Not Entitled to a Discharge When She Paid the Balance of the Plan Base</u>

12. As a preliminary matter, the court will address the Debtor's argument that she became entitled to a discharge under § 1328(a) when she paid the balance of the Plan Base. This argument presumably hinges on the Debtor's assertion that she has no required "applicable commitment period" setting a minimum duration for her Plan, because no party objected to confirmation of the Plan.[1] To address this argument, an examination of 11 U.S.C. § 1325(b) is necessary. Unless unsecured creditors will be paid in full under a proposed plan,

> [i]f the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan . . . the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B).

13. Section 1325(b)(4) provides guidelines for determining the applicable commitment period "[f]or purposes of this subsection." 11 U.S.C. § 1325(b)(4). Depending on a debtor's

---

[1] The court has ruled previously that if a debtor has not yet completed the applicable commitment period, then early payment of a plan base does not complete payments under a plan to preclude plan modification under 11 U.S.C. § 1329. *See In re Ripley*, No. 14-01265-5-DMW, 2018 Bankr. LEXIS 311, at *8-9 (Bankr. E.D.N.C. Feb. 6, 2018). In *Ripley*, the court did not address the argument raised by the Debtor in this case. That argument is that she has no applicable commitment period.

income, a debtor has an applicable commitment period of either three or five years. *Id.* In this case, the Debtor's income dictated that she has a three year commitment period, regardless of whether the trustee or a holder of an allowed unsecured claim objected.

14. Despite the limiting language of § 1325(b)(4) determining the applicable commitment period "[f]or purposes of" § 1325(b), it would be nonsensical for the applicable commitment period to apply only in cases in which an objection to confirmation is lodged. The court is aware that some courts disagree and have taken the position that "§ 1325(b)(4) mandates a fixed minimum duration for confirmation—but only if the plan triggered an objection by the trustee or a creditor. . . . [T]his fixed minimum term applies *only* if 'the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan.'" *In re Sisk*, 962 F.3d 1133, 1146 (9th Cir. 2020) (quoting 11 U.S.C. § 1325(b)(1)); *see Storey v. Pees (In re Storey)*, 392 B.R. 266, 273 (B.A.P. 6th Cir. 2008); *In re Grutsch*, 453 B.R. 420, 426 (Bankr. D. Kan. 2011); *In re Meadows*, 410 B.R. 242, 247 (Bankr. N.D. Tex. 2009).

15. The court disagrees with these courts. Instead, the court finds relevant the reasoning of the Fourth Circuit Court of Appeals when it was tasked with determining whether the applicable commitment period was a temporal requirement:

> While we find a plain reading alone sufficient to conclude that an "applicable commitment period" is a length-of-time requirement for Chapter 13 plans, we nevertheless note that our conclusion harmonizes with the 'core purpose' underpinning the 2005 bankruptcy code revisions from which the "applicable commitment period" provisions hail: 'ensuring that debtors devote their full disposable income to repaying creditors.' . . . This core purpose is best effectuated when Chapter 13 plans must last for three or five years, depending on the debtors' income, unless all unsecured claims are fully repaid sooner.
> . . .
> [T]he lack of projected disposable income at the time a plan is confirmed does not necessarily mean that additional funds with which to satisfy claims will not later surface. Indeed, as we recently saw in *Carroll v. Logan*, Chapter 13 debtors can and do benefit from windfalls such as inheritances or other unforeseeable income after plan confirmation but before their Chapter 13 proceedings are closed.

6

*Pliler v. Stearns*, 747 F.3d 260, 264-65 (4th Cir. 2014) (quoting *Ransom v. FIA Card Servs.*, N.A., 562 U.S. 61, 78 (2011) and citing *Carroll v. Logan*, 735 F.3d 147, 152 (4th Cir. 2013)).

16. The *Pliler* court did not address the Debtor's specific argument that no applicable commitment period is imposed on debtors whose plans are confirmed without objection, but the court's reasoning supports the conclusion that an objection at confirmation is not a prerequisite to a debtor having a mandatory applicable commitment period. In many Chapter 13 cases in this district, debtors have no projected disposable income, and no grounds exist at confirmation for the Trustee to object to the plan. As the *Pliler* court notes, though, Chapter 13 debtors may experience myriad events that lead to improved financial circumstances, and it would be absurd to interpret § 1325(b) to require that an objection be lodged at confirmation – when no grounds exist – in order to preserve the applicable commitment period. Stated another way,

> a rule that a debtor's applicable commitment period imposes a temporal requirement at the time of plan confirmation would lose much of its practical force if a debtor having the financial means to do so could simply sidestep that requirement by tendering a payment to the Trustee after confirmation representing the balance due under the confirmed plan before the prospect of better financial days ahead became apparent to creditors or the Trustee.

*In re Niday*, 498 B.R. 83, 89 (Bankr. W.D. Va. 2013).

17. The court also finds persuasive the logic of the United States Bankruptcy Appellate Panel for the Ninth Circuit:

> Here, the debtors attempted to complete all payments under the plan by a lump-sum payment made at plan month fourteen. . . . If a plan calling for payment in the fourteenth month of a lump sum insufficient to pay allowed unsecured claims in full had been proposed at the outset, it could not have been confirmed over the trustee's objection and hence cannot be ratcheted into effectiveness without a formal plan modification. . . . Thus, the court correctly denied the debtors' motion to enter discharge under § 1328(a) because they had neither made payments for thirty-six months nor paid allowed unsecured claims in full, as required by the terms of their confirmed plan and as required by the explicit language of §§ 1325(b)(4)(A) and (B).

*Fridley v. Forsythe (In re Fridley)*, 380 B.R. 538, 545-46 (B.A.P. 9th Cir. 2007).

18. Section 1328 allows for a discharge after completion of all payments under a plan. 11 U.S.C. § 1328(a). The Debtor was not yet entitled to a discharge under § 1328 when she paid the balance of the Plan Base, because she made the payment prior to completion of her applicable commitment period and thus had not yet completed the term of the Plan. The court conducted the hearing on the Motion prior to the completion of the Debtor's applicable commitment period, and as a result, modification of the Plan or conversion or dismissal of the Debtor's case is permissible and does not violate § 1328.

19. Even if the Debtor were considered to have completed payments under the Plan when she paid the balance of the Plan Base, the court should not be precluded from ruling on the Motion in light of the Debtor's behavior.

> [I]f the rule is that a court is powerless to punish bad faith conduct after payments are completed, then debtors whose bad faith is revealed prior to the entry of discharge can avoid all negative consequences so long as there is insufficient time for anyone to do anything about it. . . . Thus, while it may be reasonable for Congress to insist that known fraud or misconduct be addressed prior to the discharge or not at all, treating the completion of payments as the final buzzer signaling an abrupt default victory for a bad faith debtor is plainly an unfair and irrational outcome.

*In re Reppert*, 643 B.R. 828, 840-41 (Bankr. W.D. Pa. 2022).

<u>The Property was Non-Exempt Property, and the Local Rule Applied to the Sale</u>

20. As previously noted, the Debtor argues she did not violate the Local Rule, and the court will address that argument; however, the court will not address the Debtor's arguments challenging the validity of the Local Rule, as those arguments are not properly before the court. The court determined the Local Rule to be proper when it made the Local Rule, as amended,[2] and

---

[2] Rule 9029 of the Federal Rules of Bankruptcy Procedure permits district courts to authorize the bankruptcy judges of the district to make and amend rules of practice and procedure. Fed. R. Bankr. P. 9029(a)(1). The United

any consideration of its propriety should be conducted by the United States District Court for the Eastern District of North Carolina, if properly presented.

21.     The court previously has addressed the scope of the Local Rule in *In re Pulliam*, No. 19-03887-5-DMW, 2020 Bankr. LEXIS 1027 (Bankr. E.D.N.C. Apr. 13, 2020). In that case, the debtor, Mr. Pulliam, owned real property encumbered by liens with a total balance that exceeded the value of the property. 2020 Bankr. LEXIS 1027 at *2. Mr. Pulliam claimed an exemption in the amount of $30,000.00 in the property. *Id.* at *3. He filed a Chapter 13 Plan with Mr. Sasser as counsel, and he included a nonstandard provision which stated: "Because the Debtor's residence . . . is exempt, no Motion to Sell pursuant to EDNC LBR 4002-1(g)(4) shall be required should he sell the home during the pendency of this case." *Id.*

22.     The court, determining whether to confirm Mr. Pulliam's plan, examined whether the property became "exempt" when the debtor claimed an exemption in the amount of $30,000.00 in the property. *Id.* at *4. The case of *Reeves v. Callaway*, 546 Fed. Appx. 235 (4th Cir. 2013), proved to be instructive. In that case, the Chapter 7 trustee moved for authority to sell the debtors' over-encumbered residence. 546 Fed. Appx. at 237-38. The debtors asserted that by reserving their claimed exemption in the property, they had removed the property in its entirety from the bankruptcy estate, and the trustee had no authority to sell the property. *Id.* at 238. The Fourth Circuit Court of Appeals found that "[t]he fatal flaw in Debtors' position is that it ignores the distinction between exempting an asset itself from the bankruptcy estate and exempting an interest in such asset from the bankruptcy estate." *Id.* at 239.

23.     The *Reeves* court quoted *Schwab v. Reilly*, 560 U.S. 770 (2010), in its decision. In *Schwab*, the United States Supreme Court held that

---

States District Court for the Eastern District of North Carolina has authorized this court to make and amend its local rules. *See In re Local Bankruptcy Rules*, Standing Order 87-PLR-3 (E.D.N.C. Oct. 8, 1987).

9

> [w]here a debtor . . . exempt[s] nothing more than an interest worth a specified dollar amount in an asset that is not subject to an unlimited or in-kind exemption under the [Bankruptcy] Code, . . . title to the asset will remain with the estate pursuant to § 541, and the debtor will be guaranteed a payment in the dollar amount of the exemption [if the property is sold].

560 U.S. at 792. The court determined in *Pulliam* that the outcome remains the same in a Chapter 13 case, and the Local Rule remained applicable to any future sale of the property. 2020 Bankr. LEXIS 1027 at *7. The court denied confirmation of Mr. Pulliam's Chapter 13 Plan. *Id.* at *10.

24. The Debtor asserts her case is distinguishable from *Pulliam* and the cases cited therein, because title to the Property vested in the Debtor upon confirmation; however, the vesting of property is unrelated to its applicable exemption, and vesting does not trump a previously claimed, dollar-limited exemption to somehow render the property fully exempt. In *Murphy v. O'Donnell*, the Fourth Circuit Court of Appeals held that a debtor's receipt of proceeds from the sale of vested property may constitute grounds to modify the debtor's plan to pay those proceeds to unsecured creditors. *Murphy v. O'Donnell (In re Murphy)*, 474 F.3d 143, 154 (4th Cir. 2007).[3] The *Murphy* court did not have reason to address the debtor's exemption in the proceeds from the sold property, but its holding on the effect of vesting is instructive,[4] and a debtor certainly would remain entitled to retain proceeds up to the claimed exemption amount.

---

[3] In her opposition to the Trustee's request that the Plan be modified, the Debtor asserts that changes to the meaning of "income" effectuated by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 rendered *Murphy* obsolete, such that proceeds from the sale of vested property should no longer constitute grounds for a Chapter 13 plan modification. The Debtor raises this argument in conjunction with the assertion that vesting should have stronger implications in a Chapter 13 case than was recognized in *Murphy*. The court disagreed with this argument in *In re Croniser*, No. 20-00401-5-DMW, 2022 Bankr. LEXIS 2335, at *14 (Bankr. E.D.N.C. Aug. 23, 2022), and declines to address it in detail again here.

[4] The Debtor also argues that because the Property vested in her at confirmation, the court no longer had jurisdiction over the Property, and the Debtor's case should not be dismissed for her failure to obtain permission to sell the Property. *Murphy* is also instructive to address this argument. If vesting does not preclude the court from modifying a plan to account for the receipt of proceeds from vested property, then similarly, vesting would not strip the court of jurisdiction over the disposition of vested property before it is converted into cash proceeds. *See also Taylor v. Logan*, No. 5:20-CV-663-BO, 2021 U.S. Dist. LEXIS 103282, at *11 (E.D.N.C. June 2, 2021) ("[B]ased on the applicable language and rules, the bankruptcy court may, through an order, exercise oversight of non-exempt property, whether termed estate property or property of the Debtor, after confirmation of the Chapter 13 plan.").

10

25. The Debtor asserts that confirmation is *res judicata* as to the value of assets and the propriety of exemptions, and "[i]f a party to the case wished to have the Property characterized as "non-exempt" then that issue needed to be addressed at confirmation." Even though the Debtor apparently had no non-exempt equity in the Property based on the value of the Property at confirmation, confirmation did not somehow recharacterize the entire Property as exempt and outside the purview of the Local Rule. The Debtor's argument related to the *res judicata* effect of confirmation confuses, again, the effect of a claimed exemption.

26. The Debtor argues that this court has implied the Local Rule would not apply to the sale, because it has stated 11 U.S.C. § 363, which governs the use, sale or lease of property of the estate, and Rule 6004 of the Federal Rules of Bankruptcy Procedure "form the statutory and rule basis for Local Rule 4002-1(g)(4)." *In re Robinson*, No. 20-02747-5-JNC, slip op. at 3 n.3 (Bankr. E.D.N.C. Dec. 14, 2020). While local rules are tied to the Federal Rules of Bankruptcy Procedure, courts are authorized to implement local rules that are necessary for the administration of cases filed in their districts, especially rules like Local Rule 4002-1(g)(4), that provide structure for a successful Chapter 13 plan and eventual discharge. Nothing in the Local Rule conflicts with § 363 and Rule 6004. Any argument to the contrary is manufactured and less than genuine.

27. In addition to arguing ineffectively that vesting of property excludes compliance with the Local Rule, the Debtor asserts the Property was not "non-exempt." She argues that the threshold determination of applicability of the Local Rule is whether the asset was listed on Schedule C with a claimed exemption. Despite the court's prior ruling in *Pulliam*, the Debtor asserts that by claiming an exemption in the Property at the outset of this case, she deemed the Property exempt, and the Local Rule governing "non-exempt property" did not apply to the Property. Section 522 of the Bankruptcy Code directs that "[t]he debtor shall file a list of property

that the debtor claims as exempt under [11 U.S.C. § 522(b)]. . . . Unless a party in interest objects, the property claimed as exempt on such list is exempt." 11 U.S.C. § 522(l).  Although § 522(l) does not distinguish between dollar-limited and in-kind exemptions, the "property claimed as exempt" must refer to the dollar amount claimed as exempt.  The language for the exemption is not the property but the *interest* in the property.  Any other interpretation would ignore the nature of the North Carolina homestead exemption.  Further, Local Form Schedule C-1 clearly limits the homestead exemption to the dollar amount claimed by a debtor.

28.  The Debtor notes the term "non-exempt" is not defined in the Bankruptcy Code, but she asserts there are many references to "non-exempt" in bankruptcy jurisprudence, asserting it is defined as an asset in which no exemption in any amount or description has been claimed. This narrow and faulty analysis by the Debtor is asserted regardless of whether the exemption is a dollar-limited exemption or an in-kind exemption.

29.  The Debtor cites 11 U.S.C. § 722 governing redemption in Chapter 7 cases.  This section is limited to property that has been "exempted under section 522" or abandoned. *See* 11 U.S.C. § 722.  Section 722 often applies to the redemption of vehicles, an asset with a dollar-limited exemption under § 522 and all state exemption laws.  Any claimed exemption deems the property "exempted" for purposes of § 722; however, this comparison is unpersuasive, because the threshold for applicability of § 722 is only whether an exemption is claimed.  The amount of the exemption does not affect what can be redeemed, because the right to redeem extends to the entire asset, and in most cases, it is a vehicle, and not just to the debtor's exempt interest in it. *See In re Fitzgerald*, 20 B.R. 27, 30 (Bankr. N.D.N.Y. 1982).

30. The Debtor cites numerous other instances of "non-exempt"[5] being used in the Bankruptcy Code and its legislative history, in treatises and in cases. Many of the examples cited by the Debtor use the term "non-exempt" in the context of whether a debtor has assets that may be used to satisfy administrative costs or claims of creditors. For example, the Debtor references a case that cited a prior version of *Collier on Bankruptcy's Overview of Chapter 7*. The current version states that "Chapter 7 . . . normally governs liquidation of a debtor. Liquidation is a form of relief afforded by the bankruptcy laws that involves the collection, liquidation and distribution of the nonexempt property of the debtor . . . ." COLLIER ON BANKRUPTCY ¶ 700.01 (Richard Levin & Henry J. Sommer eds., 16th ed.).

31. The Debtor's examples are not instructive, because in that context, reference to a debtor having non-exempt property includes instances in which a debtor has an asset (such as a home) in which the debtor claimed an exemption, but equity exists beyond the claimed exemption that could be used to pay creditors if the asset were liquidated. For example, imagine two debtors that each have real property worth $100,000.00 and each claims a $35,000.00 homestead exemption, but the first debtor's property is encumbered by a lien with a balance of $65,000.00, and the second debtor's property is unencumbered. Both debtors claimed an exemption, but the second debtor has a "non-exempt" asset in the same context as many of the examples cited by the Debtor, because a Chapter 7 trustee could sell the property and use the non-exempt funds to pay creditors. Again, the allowed exemption is only in the debtor's *interest* in the property and not the property itself.

---

[5] Or, in many instances, "nonexempt." For purposes of consistency, unless quoting a source that states "nonexempt," this court will use the term "non-exempt."

32. Director's Form 2010, issued by the Director of the Administrative Office of the United States Courts for use by bankruptcy courts, and titled Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy, states:

> If you are an individual filing for chapter 7 bankruptcy, the trustee may sell your property to pay your debts, subject to your right to exempt the property or a portion of the proceeds from the sale of the property. The property, and the proceeds from property that your bankruptcy trustee sells or liquidates that you are entitled to, is called *exempt property*. Exemptions may enable you to keep your home, a car, clothing, and household items or to receive some of the proceeds if the property is sold.

Examples such as those cited by the Debtor, as well as Director's Form 2010 quoted above, use the term "non-exempt property" to include property that has equity beyond any liens and claimed exemption and use the term "exempt property" to include proceeds after the sale of non-exempt property. Property, depending upon value and liens, may have aspects of both exempt and non-exempt property. The debtor's interest in the property is exempt if the value exceeds the liens, subject to the value limitation of the exemption. The debtor's interest in the property is non-exempt for any value exceeding the liens and allowed exemption.

33. The Debtor cites the United States Supreme Court's general explanation that "[u]nder Chapter 7 the debtor's nonexempt assets are controlled by the bankruptcy trustee," *Marrama v. Citizens Bank*, 549 U.S. 365, 367 (2007), purportedly to suggest that "nonexempt" refers to property in which no exemption has been claimed; however, cases that more specifically describe the process by which property is treated in a Chapter 7 case make clear that a debtor's residence with a claimed exemption remains subject to the trustee's control.

> [W]hat is removed from the estate is an "interest" in the property equal to the value of the exemption claimed at filing. The implications for the cases at issue here are clear: the fact that the value of the claimed exemption plus the amount of the encumbrances on the debtor's residence was, in each case, equal to the market value of the residence at the time of filing the petition did *not* remove the entire asset from the estate.

14

*Gebhart v. Gaughan (In re Gebhart)*, 621 F.3d 1206, 1210 (9th Cir. 2010) (citing *Schwab v. Reilly*, 560 U.S. at 780). "If the debtor's particular exemption claim is limited to an interest in property, the trustee may realize the increased value of the property retained by the estate." *In re Salazar*, 449 B.R. 890, 899 (Bankr. N.D. Tex. 2011). Taken together, cases such as *Gebhart* and *Salazar* and the Supreme Court's explanation in *Marrama* support this court's conclusion that the Property was a non-exempt asset subject to the Local Rule.

34. The Debtor also cites some examples of "non-exempt" being used to refer to situations in which a debtor takes action to convert "non-exempt property" to exempt property. For example, the Debtor cites *Zanderman, Inc. v. Sandoval (In re Sandoval)*, No. 96-2391, 1998 U.S. App. LEXIS 18559, at *12 (4th Cir. Aug. 10, 1998): "Sandoval's transfer of his residence and automobile was done with the actual intent of defrauding his creditors under Section 727 by converting nonexempt property to exempt property."[6] The court does not interpret such a reference to "nonexempt property" to be limited to property in which absolutely no exemption may be claimed. After all, the North Carolina exemption statute includes what is commonly called a "wildcard" exemption available to be claimed "in any property." N.C. Gen. Stat. § 1C-1601(a)(2). Instead, those examples may also refer to situations in which a debtor significantly enhances his available exemption. In fact, in the *Sandoval* case, the debtor initially had sole ownership of his residence and vehicle but transferred them to be held with his wife as tenants by the entirety, protecting them from claims of non-joint creditors. 1998 U.S. App. LEXIS 18559, at *3. Even before the transfer, Mr. Sandoval presumably would have been able to claim a homestead exemption under state law.

---

[6] The Debtor also cites the similar cases of *Ford v. Poston*, 773 F.2d 52 (4th Cir. 1985) and *Professionals, Inc. v. Berry*, No. 93-1228, 1994 U.S. App. LEXIS 8273 (4th Cir. Feb. 1, 1994).

15

35. As to other examples cited by the Debtor, the court finds them too unrelated to the matter at hand to address.[7] The court is unpersuaded that the Property was not non-exempt and was outside the purview of the Local Rule.

Cause Exists for Dismissal of the Debtor's Chapter 13 Case

36. The court does not find modification of the Plan to be appropriate under the circumstances of this case. Instead, the court finds dismissal appropriate pursuant to § 1307(c), which states that–

> on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a [Chapter 13] case . . . to a case under chapter 7 of this title, or may dismiss a [Chapter 13] case . . . , whichever is in the best interests of creditors and the estate, for cause . . . .

11 U.S.C. § 1307(c).

37. "Reasons constituting 'cause' for dismissal include enumerated ones, such as unreasonable and prejudicial delay by the debtor or material default by the debtor, 11 U.S.C. § 1307(c)(1), (6), as well as judicially construed ones such as bad faith." *Kestell v. Kestell (In re Kestell)*, 99 F.3d 146, 148 (4th Cir. 1996) (quoting 11 U.S.C. § 1307(c) and citing *In re Love*, 957 F.2d 1350 (7th Cir. 1992)).

38. In this case, the Debtor failed to abide by the Local Rule, the Order and Notice to Debtor issued at the outset of the case (reiterating the terms of the Local Rule) and the Confirmation Order, which prohibited the transfer of real property except as provided in the Local Rule. In this district, when a debtor's property appreciates significantly in value post-petition, the court sometimes orders that upon the sale of the property, the net proceeds above the debtor's claimed exemption be held in trust by the debtor's counsel for a period of time. The Trustee then

---

[7] These references include the word "exempt" as used in 11 U.S.C. § 527(c)(3) and "nonexempt" as used in Rule 6004(d) of the Federal Rules of Bankruptcy Procedure.

has the opportunity to consider seeking modification of the debtor's plan to increase the dividend to general unsecured creditors. This practice allows the sale to occur while maintaining the status quo and avoiding any dissipation of funds before the Trustee is able to analyze the propriety of, and seek, a plan modification. *See In re Croniser*, Nos. 5:20-CV-654-FL; 5:20-CV-656-FL, 2022 U.S. Dist. LEXIS 36328, at *12 (E.D.N.C. Feb. 9, 2022) (vacated as moot, *In re Croniser*, No. 22-1227, 2022 U.S. App. LEXIS 28563 (4th Cir. Oct. 14, 2022)).

39. By failing to seek court approval of the sale as required by the Local Rule, the Debtor may have been seeking to avoid a court order protecting a portion of the Sale Proceeds until the Trustee had an opportunity to consider modification of the Plan. Even if the Debtor did not believe the Local Rule applied to the sale of the Property, the proper course of action would have been to request confirmation from the court that the Local Rule did not apply or seek to be excused from complying with the Local Rule.

40. The Debtor denies that she had any indication that she needed to obtain court permission to sell the Property, even after receiving the BA's Motion for Status Conference in which the BA specifically stated that the docket did not indicate that the Debtor had filed a motion for sale of the Property as required by Local Bankruptcy Rule 4002-1(g)(4). The Debtor did not attend the status conference scheduled to inquire about the potential sale of the Property and allowed the sale to close on June 14, 2022.

41. The Debtor's behavior is indicative of bad faith and an unwillingness to abide by the restrictions that accompany the benefits of a Chapter 13 reorganization. Chapter 13 debtors have the opportunity to discharge oftentimes substantial unsecured debt in exchange for committing to a court-approved repayment plan and submitting to the rules of this court, the statutory guidelines of the United States Bankruptcy Code and the Federal Rules of Bankruptcy

Procedure. In this case, creditors filed general unsecured claims totaling almost $35,000.00, and those claims would have been discharged upon completion of the Debtor's applicable commitment period, absent modification of the Plan. Even if the Plan were modified, and the Trustee paid all allowed claims with the Sale Proceeds, the Debtor stood to discharge scheduled debt for which no claims were filed. The Debtor should not be entitled to discharge her unsecured debt under either scenario. Chapter 13 is a voluntary process, and if the Debtor did not want to be subject to the restrictions that accompany a Chapter 13 case, then she could have dismissed her case at any time. Instead, she sought to pay the Plan Base early, reap the benefits of a discharge and skirt the rules of this court.

42. The Debtor asserts no party has been harmed by her unsanctioned disposal of the Property, but that standard should not be applied when debtors ignore orders and the local rules of this court. The Debtor's failure to comply with the Local Rule, the Order and Notice to Debtor and the Confirmation Order constitutes cause for dismissal of this case.

43. Pursuant to 11 U.S.C. § 349,

> [u]nless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in [11 U.S.C. § 109(g)].

11 U.S.C. § 349(a). Under the circumstances of this case, the court finds cause to dismiss this case with prejudice to the Debtor filing a subsequent petition for a period of five years.

44. To the extent that the five-year prohibition on filing a subsequent petition is a sanction that should be analyzed generally under the objective "no fair ground of doubt" standard under *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019), the Debtor had no objectively reasonable basis to think that the sale of the Property without court approval and without complying with the Local

18

Rule was appropriate.  The Debtor was presented with the Local Rule several times during her case and in the Confirmation Order.  She had knowledge of the requirement and chose to ignore it.  Even in the days leading up to the closing of the sale of the Property, the Debtor was reminded about the Local Rule by the BA's Motion for a Status Conference.  Even the Debtor's real estate broker inquired whether some permission from the court was needed.

45.     This court routinely accommodates debtors who need to close the sale of their assets on an expedited basis by shortening the time for notifying creditors and parties in interest and by holding emergency hearings.  The court, under the proper circumstances, will grant *nunc pro tunc* approval of a sale when the debtor seeks forgiveness instead of asserting defiance as seen in this case.  The court is still wrangling with the reasoning behind the withdrawal of the Sale Motion and the disingenuous attempt to pay the Plan Base balance early to preclude modification.  The Sale Motion could have alleviated many of the problems the Debtor is facing today.  Further, the court gave the Debtor an opportunity to amend her Plan to use the non-exempt sale proceeds to be paid to the Trustee for the benefit of her creditors, probably receive her discharge and avoid the repercussions of her earlier actions.  Unfortunately, she remained defiant and thus must accept the results of her actions; now therefore,

It is ORDERED, ADJUDGED and DECREED as follows:

1.      The Debtor's case be, and hereby is, dismissed; and

2.      The Debtor be, and hereby is, barred from filing a petition under any chapter of the United States Bankruptcy Code in any federal district for a period of five years from the date of the hearing on the Motion, August 17, 2022.

END OF DOCUMENT