IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CV-082-FL

| | |
|---|---|
| CHRISTINE M. SUGAR, )<br>  )<br>  Appellant, )<br>  )<br> v.  )<br>  )<br> MICHAEL BURNETT, Trustee, and )<br> BANKRUPTCY ADMINISTRATOR, )<br>  )<br>  Appellees. ) | ORDER |

This matter is before the court on appeal of a final order of the United States Bankruptcy Court for the Eastern District of North Carolina dismissing the case captioned <u>In Re: Christine M. Sugar</u>, 19-04279-5-DMW (Feb. 17, 2023), and barring future petitions by the debtor.[1] The issues raised have been briefed fully, and in this posture are ripe for ruling. For the reasons that follow, the judgment of the bankruptcy court is affirmed.

## BACKGROUND

Appellant petitioned for relief under Chapter 13 on September 18, 2019. John F Logan was appointed trustee shortly thereafter, and appellee Michael Burnett ("Trustee") later was appointed successor trustee. (DE 6-1 at 141). On her bankruptcy petition, appellant indicated that she owned a condominium ("the property") worth $150,000.00, subject to three liens totaling $117,651.19. She claimed the remaining $32,348.81 in value as exempt pursuant to North

---

[1] The bankruptcy court entered on July 21, 2023, an order sanctioning counsel for appellant for his conduct in this case. That order is the subject of a related appeal, see <u>Sasser v. Burnett, Trustee et al.</u>, 5:23-cv-411-FL, which will be addressed by separate order.

Carolina's homestead exemption, under 11 U.S.C. § 522 (b)(3)(A)[2] and N.C.G.S. § 1C-1601(a)(1). See In re Opperman, 943 F.2d 441, 443-44 (4th Cir. 1991) (referring to these statutory provisions as "the homestead exemption").

On November 22, 2019, the bankruptcy court confirmed the Chapter 13 plan presented by the parties. Among other provisions, the plan called for appellant to make payments of $203.00 per month for 60 months, for a total amount of estimated payments of $12,180.00. Appellant's "applicable commitment period" was 36 months and her projected disposable income as referenced in 11 U.S.C. § 1325(b)(1)(B) was $0.00 per month. (Ch. 13 Plan § 2.5 (DE 5-1 at 60).[3] The plan provided that property of the estate would vest in appellant upon plan confirmation and stipulated:

> Except as otherwise provided or ordered by the Court, regardless of when property of the estate vests in the Debtor(s), property not surrendered or delivered to the Trustee . . . shall remain in the possession and control of the Debtor(s), and the Trustee shall have no liability arising out of, from, or related to such property or its retention or sue by the Debtor(s). The use of property by the Debtor(s) remains subject to the requirements of 11 U.S.C. Â§ 363 [sic],[4] all other provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

(Id. § 7.2 (DE 5-1 at 62)). The plan added the following nonstandard provision:

> The Debtor shall be permitted to receive all net proceeds from the sale of vested property and/or exempt property that is sold during the pendency of the case. This provision shall not prejudice and/or impact the rights of parties pursuant to 11 U.S.C. [§] 1329.

(Id. § 8.1 (DE 5-1 at 63)).

---

[2]    Hereinafter, the court omits reference to Title 11 unless otherwise specified.

[3]    See 11 U.S.C. § 1325(b)(4)(A)(i). Page numbers in citations to documents in the record specify the page number designated by the court's electronic case filing (ECF) system, and not the page number, if any, showing on the face of the underlying document.

[4]    The court has retained in the quoted text a typographical error in the original.

On June 9, 2022, about five months before appellant's commitment period was to elapse, the bankruptcy administrator filed a motion for status conference stating that "[u]pon information and belief, the [d]ebtor has retained a broker to sell" the property, "has accepted an offer to purchase, and a closing may be imminent." (Bankr. Adm'r Mtn Status Conf. ¶ 3 (DE 6-1 at 103)). At that time, appellant had neither filed a motion seeking the bankruptcy court's permission for the sale, as required by Local Bankruptcy Rule 4002-1(g)(4),[5] nor provided other notice to that court. The next day, the bankruptcy court scheduled a status conference to take place June 29, 2022. Later on June 9, 2022, appellant filed a motion to sell property, relying inter alia on a general warranty deed and an offer to purchase and contract signed by both appellant and the prospective buyers. The bankruptcy court scheduled the sale motion to be heard on July 7, 2022, however, appellant withdrew her motion on June 20, 2022, before the status conference or hearing could occur.

At the status conference, counsel for appellant indicated that appellant had sold the property where she did not believe that Local Bankruptcy Rule 4002-1(g)(4) applied to her conduct. Appellant herself did not appear for the conference. The bankruptcy court required appellant to show cause why her case should not be dismissed for failure to comply with the local bankruptcy rules at hearing held November 2, 2022.

At hearing, the bankruptcy court heard testimony by appellant regarding her financial situation, her motivations for selling the property, and communications between herself and her counsel. The court then heard argument both on the applicability of Local Bankruptcy Rule 4002-1(g)(4) in that case and on appellant's responsibility to challenge that rule before violating it. At

---

[5]    Local Bankruptcy Rule 4002-1(g)(4) provides: "After filing of the petition and until the plan is completed, the debtor shall not dispose of any non-exempt property having a fair market value of more than $10,000[.00] by sale or otherwise without prior approval of the trustee and order of the court."

3

conclusion of the hearing, the bankruptcy court found that appellant had violated Local Bankruptcy Rule 4002-1(g)(4) intentionally and dismissed the case with prejudice. On February 10, 2023, the bankruptcy court entered a written order memorializing its decision which is the subject of the instant appeal. Appellant timely noticed appeal on February 17, 2023, and the parties filed record on appeal March 6, 2023. Appellant filed an opening brief May 9, 2023, and thereafter appellee responded and appellant replied.

## COURT'S DISCUSSION

A.  Standard of Review

This court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a) to review the bankruptcy court's orders. "An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts." 28 U.S.C. § 158(c)(2). "On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings." Harman v. Levin, 772 F.2d 1150, 1153 n.3 (4th Cir. 1985).[6] "Legal conclusions are reviewed de novo, but findings of fact will only be set aside if clearly erroneous." Schlossberg v. Barney, 380 F.3d 174, 178 (4th Cir. 2004). A finding of fact is clearly erroneous, although there is evidence to support it, when the reviewing court, after carefully examining all the evidence, is "left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985).

> If the [lower court's] account of the evidence is plausible in light of the record viewed in its entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

---

[6] Internal citations and quotation marks are omitted from all citations unless otherwise specified.

Id. at 573-74.

B.   Analysis

Appellant's case was dismissed for willful failure to comply with Local Bankruptcy Rule 4002-1(g)(4), which prohibits disposal of "non-exempt property" valued above $10,000 without "prior approval of the trustee and an order of the court." Local Bankruptcy Rule 4002-1(g)(4). According to appellant, the sale of her home did not violate the foregoing provision where her home was not part of the bankruptcy estate. Appellant argues in the alternative that the foregoing provision exceeds the bankruptcy court's rulemaking authority. Finally, appellant maintains that dismissal for failure to follow Local Bankruptcy Rule 4002-1(g)(4) was improper. The court addresses these arguments seriatim.

   1.   Exemption from the Bankruptcy Estate

      a.   Vesting

Appellant argues that no part of her residence was part of the bankruptcy estate because upon the confirmation of the plan all the property constituting such estate vested in her, was removed from the jurisdiction of the bankruptcy court, and became unburdened from the claims of her creditors. She relies on 11 U.S.C. § 1327(b)-(c), which provides in part that the "confirmation of a plan vests all property of the estate in the debtor," and such vested property is "free and clear of any claim or interest of any creditor provided for by the plan." (See also DE 16 at 18). As set forth below, this argument omits key language from the portion of the bankruptcy code that it cites, has been rejected by the United States Court of Appeals for the Fourth Circuit, and simply ignores other provisions of the bankruptcy code.

First, appellant quotes § 1327(c) selectively. The full section reads, "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under

5

subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan." § 1327(c) (emphasis added). All appellant's arguments thus are ineffective if the plan or the order confirming it stipulates that vested property continues to be governed by the bankruptcy court. See Goodman v. Phillip R. Curtis Enterprises, Inc., 809 F.2d 228, 232 (4th Cir. 1987) ("[A]ssets which are not drawn into the Plan vest in the debtor upon confirmation.") (emphasis added); see also Trantham v. Tate, 647 B.R. 139, No. 1:22-cv-76 (W.D.N.C. Nov. 21, 2022) (holding that § 1327(b) "expressly allows" an order of confirmation to provide that estate property vests in the debtor at a time other than confirmation); Adams v. S. Produce Distributors, Inc., No. 7:20-CV-53-FL, 2022 WL 1055434, at *9 (E.D.N.C. Mar. 28, 2022) (noting "a confirmation order vests all property of the estate in the debtor, except as otherwise provided in the plan or the order confirming the plan"); In re Goldston, 627 B.R. 841, 863 n.22 (Bankr. D.S.C. 2021) (looking to the Chapter plan for the effect of confirmation).

The confirmed plan reads, "regardless of when property of the estate vests in the [d]ebtor[], property not surrendered or delivered to the Trustee . . . shall remain in the possession and control of the [d]ebtor[]." (Chapter 13 Plan (DE 5-1 at 62)) (emphasis added). "The use of property by the [d]ebtor[] remains subject to the requirements of 11 U.S.C. § 363, all other provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules." (Id.). § 363(b)(1), in turn, provides that the "trustee, after notice and a hearing, may . . . sell . . . property of the estate." § 363 (emphasis added). See also § 1303 (providing that the debtor has the same rights as a trustee under §§ 363(b)). The statute on which debtor relies provides that its applicability is subject to exceptions provided for in the plan, and the plan in this case specifically stipulates that all estate property is governed by the Bankruptcy Code and local rules regardless of vesting. The plan explicitly references the notice and hearing requirement of § 363 for selling property of the estate outside the ordinary

course of business, and the order confirming the plan further reiterates "the debtor(s) shall not transfer any interest in real property without prior approval of the court." (DE 5-1 at 66). Thus, appellant remained subject to the notice and hearing requirement before she sold her residence.

In addition, Fourth Circuit precedent directly forecloses appellant's arguments where a bankruptcy court retains jurisdiction to modify a confirmed plan when the debtor "experience[s] a substantial and unanticipated change in [her] post-confirmation financial condition." In re Murphy, 474 F.3d 143, 152 (4th Cir. 2007). In Murphy, a Chapter 13 debtor owned a condominium worth $155,00.00, subject to a lien of $121,000.00. Id. at 147. The debtor's "confirmed plan provided that, upon confirmation, 'all property of the estate shall revest in the debtor.'" Id. When, eleven months later, he sold the condominium at a 51.6 percent increase over the listed value, the court "ordered [debtor] to share part of his newfound financial gains with his unsecured creditors" notwithstanding the fact that estate property had vested in him at the time of confirmation. Id. at 151. As here, debtor argued that "once his plan was confirmed, the Chapter 13 trustee forfeited any claim to the proceeds of the sale," however, the Fourth Circuit stated that "a debtor cannot use plan confirmation as a license to shield himself from the reach of his creditors when he experiences a substantial and unanticipated change in income." Id. at 154. Circuit precedent therefore forecloses appellant's argument that the vesting of property extinguishes the bankruptcy court's jurisdiction over such property.

Appellant's argument that the estate is extinguished at vesting also fails to account for other relevant portions of the Bankruptcy Code. For example, while § 1327 provides that property of the estate vests in the debtor at confirmation, § 1306(a) specifies that estate property includes all property and earnings that the debtor acquires "after the commencement of the case but before the case is closed, dismissed, or converted to a case" under another chapter of the Bankruptcy Code."

§1306(a). Although the Fourth Circuit has not addressed directly the interplay between §§ 1306(a) and 1327(b),[7] its precedents strongly suggest that the estate is not extinguished for all bankruptcy administration purposes. See, e.g., Murphy, 474 F.3d at 154 (allowing a Chapter 13 trustee to seek to modify debtor's plan "even though property vested in [debtor] upon confirmation"); In re Arnold, 869 F.2d 240, 241 (4th Cir. 1989) ("[I]t is well-settled that a substantial change in the debtor's financial condition after confirmation may warrant a change in the level of payments."). In sum, where appellant's interpretation of the Bankruptcy Code excludes relevant provisions of law in their entirety,[8] her argument is unavailing.

Finally, appellant does not explain how the bankruptcy court otherwise should account properly for the $70,000.00 increase in value of her home that occurred between the date of petition and the date of sale under the statutory scheme.[9] At the time of confirmation, the $70,000.00 increase in value did not exist, and as such it could not be "property of the estate" as provided by §1327(b), on which appellant relies, and could neither vest in her nor become "free and clear" or the claims of creditors as provided in § 1327(c). Here, appellant's post-petition windfall falls within the ambit of § 1306(a), which covers property acquired after commencement of the case, and is a poor fit for § 1327, which covers property extant at the time of confirmation. See In re Murphy, 474 F.3d at 152 (classifying proceeds from the sale of a home that has experienced substantial and unanticipated appreciation as "new-found income."); see also In re Marsh; 647

---

[7] See, e.g., In re Goldston, 627 B.R. 841, 863 n.22 (Bankr. D.S.C. 2021) (noting the Fourth Circuit has "expressly avoided reconciling the interplay between §§ 1306(a) and 1327(b)). Other courts have recognized "the apparent removal of property from the estate at confirmation under § 1327 is somewhat difficult to reconcile with § 1306's inclusion in the estate of all property the debtor acquires between the petition date and the date the case is closed, dismissed, or converted." In re Marsh, 647 B.R. 725, 730 (Bankr. W.D. Mo. 2023); see, e.g., In re Baker, 620 B.R. 655, 663-64 (Bankr. D. Colo. 2020) (identifying five approaches in their attempts to reconcile these sections).

[8] Appellant cites § 1306(b), which is favorable to her, without mentioning § 1306(a), which is not.

[9] The court assumes for purposes of this order that the increase in valuation was due to market conditions rather than any misrepresentation at the time of filing.

B.R. 725, 737 (Bankr. Mo. 2023) (finding that net proceeds from a home sold by Chapter 13 debtors constituted "property of the estate" under 1306(a)(1)).

Accordingly, appellant's argument that Local Bankruptcy Rule 4002-1(g)(4) was not applicable to her because her home was not part of the bankruptcy estate fails as a matter of law.

  b.  Extent of Exemption

Appellant argues that the homestead exemption extends to cover the entirety of the value of her home. The court disagrees.

When a debtor files a petition under Chapter 13 of the Bankruptcy Code, all her assets become property of the bankruptcy estate, see § 541(a), save for certain interests that she may reclaim as exempt. See § 522(c); § 522(b)(3)(A). The Bankruptcy Code allows states to define their own exemptions if they wish, see § 522(3)(A), and North Carolina allows a debtor to exempt her "aggregate interest, not to exceed thirty-five thousand dollars . . . in value, in real property or personal property that the debtor . . . uses as a residence." N.C.G.S. § 1C-1601(a)(1). This is referred to as the homestead exemption. See In re Opperman, 943 F.2d at 443-44.

The Fourth Circuit has held in the Chapter 7 context, relying on Supreme Court precedent, that the homestead exemption "expressly pertains to a debtor's 'aggregate interest' in the real property, 'not to exceed' $35,000[.00] 'in value,' and does not pertain to the real property itself." Reeves v. Callaway, 546 Fed. Appx. 235, 237 (4th Cir. 2013) (citing Schwab v. Reilly, 560 U.S. 770 (2010)). Appellant's arguments for distinguishing this Fourth Circuit and Supreme Court precedent rely on the difference between a Chapter 7 case, in which estate property is liquidated, and a case arising under Chapter 13, such as the one at bar, in which estate property vests in the debtor at confirmation. (See DE 16 at 20). The court has explained in detail why vesting in this case did not supersede the effect of the Bankruptcy Code, the bankruptcy Court's orders, or the

9

local bankruptcy rules, and accordingly vesting is not an appropriate basis for distinguishing between precedent and the case at bar.

In addition, appellant's assertions that "any amount of exemption claimed . . . remove[s] an item from" part of the bankruptcy estate (DE 16 at 19) and that "[t]here is no basis for distinguishing between property and an interest in property" (DE 16 at 20-21) are without foundation in fact or law. As the court has demonstrated, it is not at liberty to upset the careful balance of exemptions, limitations, and state prerogatives struck by the Bankruptcy Code.

2. Validity

Appellant argues that Local Bankruptcy Rule 4002-1(g)(4) exceeds the bankruptcy court's rulemaking authority. This argument was not addressed by the bankruptcy court, which determined that appellant's arguments were not properly before it and that "any consideration of" Local Bankruptcy Rule 4002-1(g)(4) itself "should be conducted by" this court. (Bankr. Order (DE 1-1) at 9). The court holds that Local Bankruptcy Rule 4002-1(g)(4) is valid as applied to appellant.

The court's authority to promulgate local rules stems from 28 U.S.C. § 2075, under which Congress delegated to the Supreme Court "the power to prescribe by general rules . . . the practice and procedure in cases under title 11." 28 U.S.C. § 2075. The Supreme Court in turn has issued Bankruptcy Rules, which in part authorize district courts to adopt local bankruptcy rules "by action of a majority of the judges thereof" or delegate the process to bankruptcy judges, as this court has done. Fed. R. Bankr. P. 9029; see In re Local Bankruptcy Rules, Standing Order 87-PLR-3, (E.D.N.C. Oct. 8, 1987). "A local rule of bankruptcy procedure cannot be inconsistent with the Bankruptcy Code," No v. Gorman, 891 F.3d 138, 141 (4th Cir. 2018), nor may it "abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2075.

a. Procedural Nature

Appellant argues first that Local Bankruptcy Rule 4002-1(g)(4) is substantive, rather than procedural. A procedural rule governs "the manner and means by which the litigants' rights are enforced" as opposed to a substantive "rule[] of decision by which the court will adjudicate those rights." Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co., 559 U.S. 393, 407 (2010). "The test is not whether the rule affects a litigant's substantive rights; most procedural rules do." Id.; see In re Walat, 87 B.R. 408, 411 (Bankr. E.D. Va. 1988) (Local Bankruptcy Rules "are entitled to a presumption that they were promulgated with the proper authority and do not affect substantive right[s.]").

Appellant has not identified any substantive right that was violated in this instance. Appellant does not identify, and the court has not found, any provision of the Bankruptcy Code that gives a Chapter 13 debtor an absolute right to sell property of the estate. To the contrary, § 363 curtails a debtor's ability to sell property of the estate by requiring "notice and hearing" before any sale may take place. See §363(b); see also § 1303 (providing that the debtor has the same rights as a trustee under § 363(b)). Upon request of an entity with an interest in the property proposed to be sold, "the court, with or without a hearing," is empowered to prohibit the sale of property in order to protect such interest. § 363(e). Board of Regents v. Roth, to which appellant refers for the principle that the right to contract is protected by the United States Constitution, is an employment case which references neither bankruptcy nor the buying and selling of property. 408 U.S. 564, 572 (1972). Nor does appellant explain how Local Bankruptcy Rule 4002-1(g)(4) implements a "rule of decision." Shady Grove Orthopedic Associates, P.A., 559 U.S. at 407. Appellant thus fails to meet her burden.

Appellant's argument that even if her home was the property of the bankruptcy estate, the process to sell it "would merely require a notice of proposed sale and no court order would be required so long as the sale was unopposed" is at odds with the facts of this case. (DE 16 at 34). Appellant did not file a notice of proposed sale; instead, the bankruptcy administrator filed on June 9, 2022, a motion for status conference indicating his belief that appellant "retained a broker to sell the [residence], . . . accepted an offer to purchase, and a closing may [have] be[en] imminent." (DE 6-1 at 103). The next day, counsel moved to sell the property, attaching as an exhibit an offer to purchase and contract that had been signed by appellant and the prospective buyer almost two months earlier. The court is not at liberty to decide whether the rule is substantive or procedural based on hypothetical facts presented by counsel. See Aetna Life Ins. Co. of Hartford, Conn. V. Haworth, 300 U.S. 227, 242 (1937) (prohibiting "advisory opinion[s] upon a hypothetical basis.")

        b.        Relationship to the Bankruptcy Code

Appellant also argues that Local Bankruptcy Rule 4002-1(g)(4) is inconsistent with the Bankruptcy Code where it extends the bankruptcy court's jurisdiction over exempt property. The court has already determined the bankruptcy court retained jurisdiction over appellant's home notwithstanding any vesting of estate property in appellant or appellant's claim of a homestead exemption.

Appellant also states that Local Bankruptcy Rule 4002-1(g)(4) is impermissibly duplicative of the Code and the Federal Rules. Appellant points to § 363(b), which authorizes the sale of property of the estate other than in the ordinary course of business "after notice and hearing," and Federal Rule of Bankruptcy Procedure 6004, which instructs that "notice of a proposed . . . sale . . . not in the ordinary course of business shall be given" in accordance with other Rules of Bankruptcy Procedure, if applicable, other portions of the bankruptcy code. Where Local

Bankruptcy Rule 4002-1(g)(4) implements $10,000.00 floor for sales requiring court involvement that is not reflected in §363(b) or Bankruptcy Rule 6004, it is not impermissibly duplicative of the Bankruptcy Code or Rules.

      c.      Uniformity

Finally, appellant alludes to an argument that the rule is non-uniform. (See DE 16 at 30) ("The U.S. Constitution does not allow for nonuniform bankruptcy laws regardless of whether that nonuniformity is procedural or substantive."). However, the court is unable to evaluate the strength of any such argument where appellant has neither produced an example of a rule from another jurisdiction that conflicts with the one at issue, nor explained the grounds for her argument. Accordingly, appellant's challenge to the validity of Local Bankruptcy Rule 4002-1(g)(4) fails.

      3.      Propriety of Dismissal

Appellant argues that dismissal of her case was inappropriate because she was entitled to a discharge when she paid the balance of the plan base, had an objectively reasonable basis to think that the sale of the property without court approval and in defiance of Local Bankruptcy Rule 4002-1(g)(4) was appropriate, and harmed no one by her actions. The court disagrees on all three counts.

      a.      Commitment Period

Appellant argues incorrectly that her lump sum payment of $5,481.00 fulfilled her obligations under the plan and entitled her to a discharge. According to appellant, she had no applicable commitment period because no one objected before confirmation. She relies on § 1325(b), which provides in relevant part that "[i]f the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan," the plan allocates "all of the debtor's projected disposable income

to be received in the applicable commitment period" to payments to unsecured creditors. Section 1325(b)(4) provides that such applicable commitment period is three years unless the debtor meets income thresholds not relevant here.

In the Fourth Circuit, the "applicable commitment period is a length-of-time requirement for Chapter 13 plans." Pliler v. Stearns, 747 F.3d 260, 264 (4th Cir. 2014). "[I]f [a d]ebtor wants an early discharge before the end of his three year commitment period, he needs to obtain a modification of the [p]lan to do so." In re Niday, 498 B.R. 83, 89 (Bankr. W.D. Va. 2013); see also In re Reppert, 643 B.R. 828, 836 (rejecting the argument that § 1328(a) requires discharge "after the completion of plan payments" where it "underestimate[s] the magnitude of absurd results wrought by a too literal interpretation").

The bankruptcy court acknowledged that other cases "take[] the position that § 1324(b)(4) mandates a fixed minimum duration for confirmation . . . only if the plan triggered an objection by the trustee or creditor," indicating it "disagree[d] with those courts." (DE 1-1 at 6). This court agrees with the bankruptcy court. In addition, several of the cases supporting appellant's point of view are distinguishable from the case at bar. The Ninth Circuit has stated that "a fixed minimum duration for confirmation" applies "only if the plan triggered an objection by the trustee or a creditor," but only in the context of controversy over whether a debtor, trustee, and creditors may mutually agree to confirm a plan with an estimated rather than a fixed duration. In re Sink, 962 F.3d 1133 (9th Cir. 2020). The Bankruptcy Appellate Panel of the Sixth Circuit likewise has stated that "[i]f no objection to confirmation is interposed, the plan may be confirmed regardless of the applicable commitment period," however, this statement was made in the context of a dispute over whether a plan could be modified to rectify a mathematical error by the Trustee which could have been discovered prior to confirmation. In re Storey, 392 B.R. 266, 273 (B.A.P. 6th Cir.

14

2008). Neither of these cases addressed a debtor who sought to avoid altogether a motion for modification following an unanticipated change in financial circumstances after confirmation. See id. at 269 ("This is not the typical modification case where modification of plan terms is sought due to the amount of claims filed or to a post-confirmation change in the debtor's income.").

In addition and in the alternative, appellant agreed to a commitment period of 36 months under the terms of the plan. (See Chapter 13 Plan § 2.5 (DE 5-1 at 60)) ("The Applicable Commitment Period of the Debtor(s) is 36 months[.]"). Whatever floor § 1325(b) might otherwise set, appellant voluntarily agreed to a 36 month commitment period in this case.

      b.      Bad Faith

Debtor challenges the bankruptcy court's dismissal of her Chapter 13 case under § 1307(c), arguing that the civil contempt standard was not met.

Appellant received notice of the restriction on disposal of non-exempt property not only through Local Bankruptcy Rule 4002-1(g)(4) itself, but also through two orders of the bankruptcy court. See (Bankr. Order dated Sept. 20, 2019 ¶ 10 (DE 5-1 at 65) ("You must not dispose of any non-exempt property having a fair market value of more than $10,000.00 by sale or otherwise without prior approval of the trustee and an order of this court."); (Bankr. Order dated Nov. 22, 2019) ("[T]he debtor[] shall not transfer any interest in real property without prior approval of the court except as provided in Local Bankruptcy Rule 4002-1(g)(4) and (5)[.]"). Nevertheless, appellant did not file a motion to sell the property until the day after the bankruptcy administrator notified the court that debtor had retained a broker to sell the property and accepted an offer to purchase. (See Mtn. for Status Conf. (DE 6-1 at 103).[10] The bankruptcy court scheduled a status

---

[10] Appellant's motion to sell and exhibits do not seem to have made the transition from the bankruptcy court. Debtor's Motion to Sell Property (DE 23), In re Sugar, No. 19-04279-5-DMW. The bankruptcy court apparently relied on the representations in the motion, and only later learned that debtor had already transferred the property.

conference to discuss the matter and set appellant's motion to be heard, but appellant instead finalized the sale, withdrew her motion, and did not attend personally the status conference. The bankruptcy court found that this behavior was "indicative of bad faith and an unwillingness to abide by the restrictions that accompany the benefits of a Chapter 13 reorganization." (Bankr. Order (DE 1-1) at 17). Accordingly, it dismissed appellant's case pursuant to § 1307(c).

Section 1307(c) provides that a court "may dismiss a case under" Chapter 13 "for cause." As the bankruptcy court explained, "reasons constituting 'cause' for dismissal include" judicially created ones "such as bad faith." In re Kestell, 99 F.3d 146, 148 (4th Cir. 1996). "Overlaying [this] specific provision[] is the broad grant of judicial power set forth in 11 U.S.C. § 105(a)," which authorizes bankruptcy courts to take "any action or make[] any determination necessary or appropriate . . . to prevent an abuse of process." Id. Appellant's argument that the bankruptcy court could not properly have held her in civil contempt if there was a fair ground of doubt as to the wrongfulness of her conduct cites to the wrong standard. "The plain meaning of section 105 goes beyond contempt of court power[, and] it also grants judges the authority to dismiss a bankruptcy petition sua sponte for ineligibility, for lack of good faith, or for one of the causes enumerated in section 1112." In re Kestell, 99 F.3d at 149. Where the bankruptcy court found that appellant's actions were in bad faith, her citation to the standard for civil contempt lacks merit.

c.  Harm

Finally, appellant argues that dismissal was improper where no parties were harmed by her conduct. Her arguments in support of this position rest entirely on her belief that net proceeds from the sale were not property of the estate. As the court explains in § b(1), supra, this belief is without basis in fact or law.

Accordingly, appellant's arguments for reversal are without merit.

## CONCLUSION

Based on the foregoing, the court AFFIRMS the order of the bankruptcy court. Because the facts and legal arguments are adequately presented in the briefs and record, the court dispenses with oral argument under Federal Rule of Bankruptcy Procedure 8019(b), as argument would not aid significantly in the decisional process. The clerk is DIRECTED to close this case.

SO ORDERED, this the 27th day of March, 2024.

_____
LOUISE W. FLANAGAN
United States District Judge